BENJAMIN ELECTRIC MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5300.   Promulgated April 30, 1927.

1. The Board has no jurisdiction over 1918 as the Commissioner asserted no deficiency for that year. *Cornelius Cotton Mills,* 4 B. T. A., 255.

2. The petitioner and the Starrett Manufacturing Co. were not affiliated during 1919.

*Briggs G. Simpich, Esq.,* for the petitioner.
*J. Harry Byrne, Esq.,* for the respondent.

This proceeding is for the redetermination of income and profits taxes for 1918 and 1919. The Commissioner asserts that for 1918

there is an overassessment of $45,081.50 and for 1919 a deficiency of $11,769.91. The petitioner alleges that the Commissioner erred in refusing to affiliate it with the Starrett Manufacturing Co.

### FINDINGS OF FACT.

The Benjamin Electric Manufacturing Co., hereinafter referred to as the Benjamin Company, is an Illinois corporation, organized in 1901, located at Chicago and engaged in the manufacture and sale of electrical supplies and equipment. The business of the corporation was carried on by four men, R. B. Benjamin, inventor; Walter D. Steele, engineer; W. Clyde Jones and Keene H. Addington, lawyers. The capital stock of the petitioner until 1918 consisted solely of common stock, which was held as follows: Benjamin, one-third; Steele and Jones, one-fourth each; Addington, one-sixth.

Some time in 1912, H. F. Starrett, who had invented a line of panel switchboards, brought the same to the attention of Jones, who is a patent attorney. Jones interested the other stockholders and they decided that the corporation should acquire the invention. The proposed plan of acquiring the panel switchboards was by the organization of a new corporation, the four stockholders of the Benjamin Company to own a two-thirds interest and Starrett the remaining third. Due to the fact that the petitioner, the Benjamin Company, was promoting its Canadian corporation, this plan had to be abandoned. Starrett thereupon secured other capital and undertook the manufacture and sale of his inventions under the corporate name of the Starrett Electric Co.

While so operating, Starrett was from time to time in touch with and consulting Steele, the sales manager and vice president of the Benjamin Company. At the same time, Jones and Addington were acting as attorneys for Starrett's company. In 1916 the Starrett Electric Co. became bankrupt. Steele and the other stockholders determined to carry out the plan which had been abandoned in 1912. Accordingly the Central West Manufacturing Co. was organized for the express purpose of purchasing the assets of the bankrupt company. Funds in the amount of $40,000 were provided by the Benjamin Company to effectuate the purchase. The assets were purchased by the Central West Co. at a public sale. After acquiring these assets the Central. West Co. entered into a contract with Starrett, the inventor, whereby he was issued $20,000 of stock in consideration for his personal-service contract, a certain amount of cash, patents issued to him and the rights to his future inventions. The company was capitalized at $60,000, the name was changed from Central West Manufacturing Co. to Starrett Manufacturing Co., and business resumed. The stock of the Starrett Manufacturing Co., was

held one-third by Starrett, one-half by the four Benjamin Company stockholders, and one-sixth by Kodjbanoff, sales manager of the eastern offices of the Benjamin Company. Originally the one-sixth interest held by Kodjbanoff had been divided equally between himself and one Poss, the western sales manager of the Benjamin Company. However, prior to 1918, Kodjbanoff secured the permission of the four Benjamin Company stockholders to purchase the shares held by Poss, so that during the taxable years here in question, Kodjbanoff was the owner of a one-sixth interest in the Starrett Manufacturing Co. The one-half interest in the Starrett Company owned by the four stockholders of the Benjamin Company was held in the same ratio as the stock which they owned in the Benjamin Company.

On July 3, 1916, before the Central West Manufacturing Co. had changed its name, it entered into a contract with the Benjamin Electric Co., which provided that the latter company should be the sole and exclusive agent for all products of the former, that sales should be promoted through the sales organization of the Benjamin Company. It was to receive for its services as selling agent 25 per cent of the selling price on all products and merchandise. The terms of this contract were strictly adhered to by the contractual parties during the taxable years.

The officers and directors of the Benjamin Company and the Starrett Manufacturing Co., during 1918 and 1919 were:

| Office. | Benjamin Co. | Starrett Mfg. Co. |
|---|---|---|
| President | R. B. Benjamin. | Henry F. Starrett. |
| Vice president | J. H. Fall, Jr. (Also assistant treasurer.) | Keene H. Addington. |
| Vice president | Walter D. Steele. (Also assistant secretary.) | |
| Treasurer | W. Clyde Jones. | Walter D. Steele. |
| Secretary | Keene H. Addington. | R. B. Benjamin. |
| Directors | R. B. Benjamin. | H. F. Starrett. |
| | Keene H. Addington. | Keene H. Addington. |
| | Walter D. Steele. | Walter D. Steele. |
| | W. Clyde Jones. | |
| | J. H. Fall, Jr. | |
| | David R. Forgan. | |
| | Robert Stuart. | |

The by-laws of the Starrett Manufacturing Co., contained the following clause: "Article 4 Section 7. The majority of the Board of Directors may at any time remove any officer and elect his successor." There has been no occasion to invoke this provision since incorporation of the Starrett Manufacturing Co.

The ownership of the outstanding stock of the Benjamin Company and the Starrett Manufacturing Co., on December 31, 1918, and December 31, 1919, was as follows:

| STOCKHOLDER. | BENJAMIN CO. | | | | | | STARRETT CO. | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1918. | | | 1919. | | | 1918. | 1919. |
| | Common. | First preferred. | Second preferred. | Common. | First preferred. | Second preferred. | | |
| R. B. Benjamin | 1800 | | 2060 | 1800 | | 2060 | 100 | 100 |
| Walter D. Steele | 1350 | | 1545 | 1350 | | 1500 | 75 | 75 |
| W. Clyde Jones | 1350 | | 1545 | 1350 | | 1545 | 75 | 75 |
| Keene H. Addington | 900 | | 1030 | 900 | | 1030 | 50 | 50 |
| J. H. Fall, Jr | 1200 | | 2410 | 1200 | | 2378 | | |
| B. H. Kodjbanoff | | | 158 | | | 158 | 100 | 100 |
| Henry F. Starrett | | | | | | | 200 | 200 |
| Sundry small holdings | | 7500 | 1057 | | 7500 | 1329 | | |

The percentage of total stock outstanding held by each stockholder was:

| STOCKHOLDER. | BENJAMIN CO. | | STARRETT CO. | |
| --- | --- | --- | --- | --- |
| | 1918. | 1919. | 1918. | 1919. |
| R. B. Benjamin | 16. 15 | 16. 02 | 16. 67 | 16. 67 |
| Walter D. Steele | 12. 11 | 11. 83 | 12. 50 | 12. 50 |
| W. Clyde Jones | 12. 11 | 12. 01 | 12. 50 | 12. 50 |
| Keene H. Addington | 8. 07 | 8. 01 | 8. 33 | 8. 33 |
| B. G. Kodjbanoff | 0. 66 | 0. 65 | 16. 67 | 16. 67 |
| J. H. Fall, Jr | 15. 10 | 14. 85 | | |
| Henry F. Starrett | | | 33. 33 | 33. 33 |
| Others | 35. 80 | 36. 63 | | |
| Total | 100. 00 | 100. 00 | 100. 00 | 100. 00 |

Starrett attended the stockholders' meetings of the Starrett Company and voted his stock. There has always been harmony among the stockholders and Starrett has not opposed the actions of the other stockholders of the Starrett Company.

From time to time and as needed the Benjamin Company made advances to the Starrett Company. The advances were made in various amounts but at no time did the total exceed $20,000. The Benjamin Company made the advances by their check and received in exchange therefor the note of the Starrett Company signed by its officers. It was a matter of several years before the Starrett Company became self-supporting.

J. H. Fall, Jr., became a stockholder, officer, and director of the Benjamin Company early in 1918 in a transaction whereby the petitioner acquired the Royal Enameling & Mfg. Co. The latter company had been the principal source of supply of reflectors and other products needed by the Benjamin Company. The Royal Company

was largely owned by J. H. Fall, Jr., and there had always been the closest business relations between Fall and the Benjamin Company stockholders. A consolidation was effected whereby Fall became the fifth principal stockholder in the Benjamin Company. In order to bring about the consolidation it was necessary to recapitalize the Benjamin Company. The authorized capital stock was increased to $3,000,000 divided into three classes of stock consisting of $1,000,000, first preferred; $1,000,000 second preferred, and $1,000,000 common.

The first preferred was offered to the public to provide working capital and was sold as an investment stock. This stock paid 8 per cent dividends and the dividends were cumulative. The stock was sold subject to retirement at $110 per share on 60 days' notice. The company was authorized to redeem each year 5 per cent of the maximum amount of outstanding stock at any one time. A total of 7,500 shares of this stock was sold in small lots to the public, and each year 5 per cent of this total was redeemed. The amount redeemed, beginning in 1919 and each year thereafter, amounted to 375 shares per annum. None of the purchasers of first preferred stock held any second preferred or common stock.

The second preferred stock was used in part to acquire the interests of Fall in the Royal Company and in part to cover assets of the Benjamin Company. Fall received in exchange for his interest in the Royal Company $400,000 of the second preferred stock of the Benjamin Company. Of the remainder $510,000 was distributed, one-third to Benjamin, one-fourth each to Steele and Jones, and one-sixth to Addington. The balance of the second preferred stock, amounting to $90,000, was sold to employees of the Benjamin and Royal Companies as compensation for faithful services. The amount offered each employee was allotted on the basis of time and the service and usefulness to their respective companies, so that by December 31, 1919, all of the second preferred stock was outstanding. Only 6,600 shares of the common stock were issued; 5,400 shares were divided between Benjamin, Steele, Jones, and Addington in the same proportion as they had formerly held prior to the recapitalization. Fall secured the remaining 1,200 shares in accordance with an agreement with the four stockholders of the Benjamin Company, whereby he exchanged a part of his second preferred for this amount of common stock.

Prior to the recapitalization the officers, directors and stockholders of the petitioner were Benjamin, Steele, Jones, and Addington; after the consolidation and recapitalization the board of directors was increased from four to seven. The new directors were Fall, Forgan, and Stuart. Forgan and Stuart owned a small amount of first pre-

ferred which they purchased on the open market upon their own initiative. They had strong business connections which added materially to the strength of the directorate. Forgan was president of the National City Bank of Chicago. Stuart was treasurer of the Quaker Oats Co., and a relative and partner of Jones. Stuart had been consulted from time to time by the Benjamin Company's stockholders as to certain corporate actions and was interested in the company.

All the stock of the petitioner had voting rights. The first preferred stock was held in small lots by a large number of people and was widely scattered. Very few of the first preferred stockholders exercised their right to vote except by way of proxy. The second preferred stockholders outside of the five directors were all employees of the petitioner or the consolidated company. The common stock was held by five directors of the Benjamin Company, viz., Benjamin, Fall, Steele, Addington and Jones. At the annual stockholders' meetings for 1918 and 1919, the stockholders present and their holdings were as follows:

List of stockholders present at the annual meeting on February 11, 1918.

| Name. | Number of shares. |
|---|---|
| Reuben B. Benjamin | 3, 900 |
| Walter D. Steele | 2, 925 |
| J. Horton Fall, Jr | 3, 684 |
| W. Clyde Jones | 2, 925 |
| Keene H. Addington (represented by Walter D. Steele as proxy) | 1, 950 |
| J. Horton Fall (represented by J. Horton Fall, Jr., as proxy) | 110 |
| George W. Holman | 152 |
| A. E. Clarke | 90 |
| Total | 15, 700 |

List of stockholders present at the annual meeting March 11, 1919.

| Name. | Number of shares. |
|---|---|
| Reuben B. Benjamin | 3, 860 |
| J. Horton Fall, Jr | 3, 610 |
| W. Clyde Jones | 2, 895 |
| Walter D. Steele | 2, 895 |
| David R. Forgan | 25. |
| Robert Stuart | 100 |
| E. C. Wyman | 25 |
| J. W. Martin | 5 |
| C. T. Warden | 10 |
| Henry Pollard | 20 |
| O. T. Johnson | 5 |
| O. F. Westphal | 25 |
| A. E. Lubeck | 5 |
| J. H. Taylor | 3 |
| R. J. Aldrich | 10 |
| J. J. Rayspis | 5 |

| Name. | Number of shares. |
|---|---|
| Wilsene MacNaughton | 5 |
| Ruthella B. Howe | 25 |
| E. C. Mott | 10 |
| Joseph Estes | 20 |
| E. A. Drake | 20 |
| H. H. Haylett | 15 |
| P. M. Lewis | 10 |
| 165 stockholders represented by J. Horton Fall, Jr., and W. D. Steele, proxies | 6, 134 |
| | 19, 737 |

The first preferred stockholders present at the annual meeting of March 11, 1919, besides Forgan and Stuart, directors, were Wyman, Martin and Warden. The remaining stockholders owned second preferred stock and outside of the four directors were employees of the Benjamin Company. The proxies held by Steele and Fall included proxies for a considerable amount of first preferred stock.

For the year 1918 the petitioner on its original return showed $159,884.42 as the correct tax. The respondent determined the tax to be $114,802.92 and notified the petitioner of an overassessment of $45,081.50. For 1919 the respondent determined the deficiency of $11,769.91. The petitioner appeals as to both years, alleging that it should have been affiliated with the Starrett Manufacturing Co.

OPINION.

MORRIS: The respondent contends that the Board has no jurisdiction as to 1918 because no deficiency has been asserted as to that year. We must sustain his contention. *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255. See also *Appeal of Stange-Elliott Coal Co.*, 4 B. T. A. 745; *Appeal of John F. Cook*, 4 B. T. A. 916; *Appeal of Florence M. Smith, Executrix*, 5 B. T. A. 225; *Appeal of C. Willenborg & Co.*, 5 B. T. A. 788.

The remaining question is whether the petitioner should be affiliated with the Starrett Manufacturing Co. Affiliation, if it exists, must be based on ownership or control of substantially all the stock. *Appeal of Tunnel Railroad of St. Louis*, 4 B. T. A. 596. The control required by the statute is control of the voting stock, and this control must be shown to be genuine, and must be actually exercised. *Appeal of Isse Koch & Co.*, 1 B. T. A. 624. Control of the business with a quiescent minority is not sufficient, nor is the fact that there is unity of purpose and harmonious cooperation sufficient to satisfy the statutory requisites for affiliation. *Rishell Phonograph Co.*, 2 B. T. A. 229. *Tunnel Railroad of St. Louis, supra*. We have also said, in the *Appeal of Cleveland & Mahoning Valley Railway Co.*, 4 B. T. A. 1040, that " it will be noted that the words ' controls ' and ' controlled '

as used in section 240 (b) of the Revenue Act of 1918 are not in any manner limited or qualified. In the absence of any qualification these words must be taken to mean full and complete control." Whether or not in the instant case the same interests control substantially all of the stock will be determinative of whether or not affiliation should be allowed.

It appears from the facts that two-thirds of the stock of the Starrett Company was owned outright by stockholders of the petitioner during 1919. The remaining one-third was owned by Starrett who was president of the company and closely connected with the principal stockholders of the petitioner. The Board has held that where there has been a two-thirds ownership of the stock of one company, that this is not sufficient to constitute substantially all as required by the statute. *Appeal of Madera Yosemite Big Tree Auto Co.*, 2 B. T. A. 346; *Appeal of United Metal Spinning Co.*, 2 B. T. A. 520; *Appeal of Greenville Coaling & Export Corporation*, 4 B. T. A. 183. There is no evidence that the stock held by Starrett was controlled by the stockholders of the Benjamin Company. The fact that Starrett worked with and did not oppose the actions of the majority stockholders is not sufficient evidence in our opinion to hold that the stock owned by Starrett was controlled by the other stockholders. Nor do we believe that the by-law giving to a two-thirds majority of the directors the right to remove an officer of the corporation, is a good and sufficient reason for saying that the Benjamin stockholders exercised control over the stock held by Starrett. We are not unmindful of the powers conferred upon a two-thirds vote of the stockholders of a corporation by the Illinois statute. Such powers, although seemingly unlimited, relate to the control of the corporation, and not to the minority stock, and such statute can not supplant the express wording of section 240 that substantially all of the stock must be owned or controlled by the same interests.

Our decision in this case, however, need not rest upon the percentage of ownership, and control, if any, that was exercised over Starrett's stock. Assuming that substantially all of the stock of the Starrett Company was owned or controlled by stockholders of the Benjamin Company, those said stockholders did not own or control substantially all of the stock of the latter company. An examination of the stock held by stockholders common to both corporations shows that the same interests owned 49.1 per cent on January 1, 1919, and 48.5 per cent on December 31, 1919, of the outstanding stock of the petitioner. At no time during 1919 did the same interests own 50 per cent of the outstanding stock. While we recognize that ownership and control are both provided for by the statute, we do not find that there has been sufficient evidence adduced to show

control by Benjamin, Steele, Jones, Addington, and Kodjbanoff of the stock held by the other stockholders.

The petitioner would have us exclude from consideration all the stock held by the first preferred stockholders for the reason that it was offered and sold as an investment stock and the holders thereof took no active part in the corporate affairs. In support of its position the petitioner cites the decision of the Board in the *Appeal of Mahoning Coal Railroad Co.*, 4 B. T. A., 923. It should be noted that the closely affiliated interests in the Mahoning case held 74 to 80 per cent of the stock, while here the same interests held no more than 49.1 per cent in one corporation and 66⅔ per cent in the other. We believe that under these facts the cases are easily distinguishable.

The petitioner has also laid considerable stress upon our opinion in the *Midland Refining Co.*, 2 B. T. A. 292, and asserts that the instant case and the facts in the Midland case are practically identical. We do not feel that this argument is tenable in view of the facts in that case. The facts in the Midland case show that 62.71 per cent of the stock of one company and 51.07 per cent of the stock in the other corporation were owned by three men, and that approximately 80 per cent of the stock was held by persons owning stock in both corporations. Here the same interests never owned more than 49.1 per cent of the petitioner and 66⅔ per cent of the Starrett Company.

We do not feel therefore, that the same interests owned or controlled substantially all of the stock of the two corporations. It is true that Fall worked with the principal stockholders toward an harmonious end, and it seems likewise to be true that the two corporations worked together as a business unit but control of the business is not sufficient to meet the requirements for affiliation. *Appeal of Norwich & Worcester Railroad Co.*, 2 B. T. A. 215; *Appeal of Watsontown Brick Co.*, 3 B. T. A. 85; *Appeal of Tunnel Railroad of St. Louis*, 4 B. T. A. 596; *Adaskin-Tilley Furniture Co.* v. *Commissioner*, 6 B. T. A. 316. In the *Tunnel Railroad of St. Louis* case we said "we could not so far disregard the language of the statute as to hold that control of the property and business of the corporation is control of the stock."

*Judgment will be entered for the respondent.*